FREDERICKE KEESE, administratrix, &c., *vs.* THE NEW YORK, NEW HAVEN AND HARTFORD RAILROAD COMPANY.

Although a railroad company exhibits negligence by running its engines through a populous city at a rapid rate, yet if a party injured thereby contributes, in any degree, by his own negligence, to the injuries received, the company is absolved.

The law does not require that the sight and ears of a person crossing a railroad track shall be immaculate or infallible, but that he shall use them to avoid injury. He may err in judgment; his ears or his eyes, or both, may deceive him, and his judgment thus being at fault, he may contribute to the injuries he receives, and go without remedy; but whether he did so or not is a question for the jury; unless the evidence plainly admits of but one conclusion, and that, that he was guilty of negligence. *Per* BRADY, J.

If the evidence upon the subject of contributory negligence is conflicting, it is proper for the court to refuse to dismiss the complaint.

Where the son of a person injured by the defendant's locomotive, who was with him when he was injured, testified that when they came up to the railroad track, they stopped, before crossing it, and each looked both ways, up and down the track, but could not hear if any locomotive was coming; and that there was no whistle blown or bell rung; *held* that this was doing all that the party was bound to do ; and that proper diligence, observation, care and caution on his part was shown.

APPEAL by the defendant from a judgment entered on the verdict of a jury.

*Calvin G. Child*, for the appellant.

*Field & Minor*, for the respondent.

BRADY, J. This action was brought to recover the damages sustained by the widow and next of kin of John Keese, deceased, who died from injuries received through the alleged carelessness of the defendant. The case was submitted to the jury on conflicting evidence as to material points, clearly and fully. The requests of the defendant's counsel were granted, and no exception was taken to the charge of the presiding justice. The only exception open for review is the refusal of the court to dismiss the complaint. The decision on that subject was proper. The deceased was bound, under the stringent rules of law prevaling in this state, to use his eyes and ears, to shield the company from the consequences of its own neglect exhibited by running its engines through a populous city at rapid rates. The proposition thus stated is not at all exaggerated, because if the deceased contributed in any degree by his own negligence to the injuries received, the defendant is absolved.

The defendant had the benefit of this rule, and of all rules bearing upon the subject to which the attention of the court was called.

The plaintiff's case established proper diligence, observation, care and caution on the part of the deceased — the use of eyes and ears — before attempting to cross the defendant's track. The law does not require that the sight and ears of the wayfarer shall be immaculate or infallible, but that he shall use them to avoid injury — an incident more likely to occur than its opposite. It is not presumable, on a just consideration of the affairs of this life, that a man will use his eyes and ears to incur danger — to simulate only, and not to act — but that

yielding to the instinct of self preservation he will avoid, not seek danger.

He may err in judgment. His ears or his eyes, or both, may deceive him, and his judgment thus being at fault, he may contribute to the injuries he receives and go without remedy ; but whether he did so or not is for the jury, unless the evidence plainly admits of but one conclusion, and that, that he was guilty of negligence. In this case, for example, the son of the deceased, who was with him when he was injured, stated that when they came up to the railroad track they stopped before crossing it. They each looked both ways — each looked up and down the railroad track — each listened, but could not hear if any locomotive was coming, and that there was no whistle blown or bell rung.

This was doing all that the deceased was bound to do, and there was nothing in the case, when the motion to dismiss was made, which so far overcame the statement thus made as to make it apparent that the deceased had, by his own negligence, contributed to the injury. It must also be said that the motion was first made when the defendant rested, and before the rebutting testimony given on the part of the plaintiff had been put in. It was received, it is true, upon the close of the case, but the issues depending were then in more serious doubt than when the defendant rested, in consequence of the further testimony given on behalf of the plaintiff.

The case as finally submitted was one containing diverse evidence on several features. The only persons present at the time of the accident who saw it were the plaintiff's son and the engineer of the train. They were in contradiction on three subjects, namely ; — the weather, whether clear or foggy, whether a signal was given of an approaching train, and as to the manner in which the deceased was conducting himself — whether walking down or across the track. The engineer was

indeed on these subjects, or some of them, inconsistent in his statements, and therefore subject to criticism, which was, no doubt, indulged in by the counsel for the the plaintiff, and which might be employed here, if necessary.

It is true that there are some circumstances growing out of the evidence given on behalf of the defendant which tend to show that the son of the deceased was mistaken as to some things; but there are not wanting circumstances to show that in reference to them he was right, the case being considered on the whole of its incidents. The counsel for the appellant has presented his side of this appeal in a very elaborate manner, one indicating industry, ingenuity and research; but although there are numerous adjudications on questions of negligence, and many in which the courts have reviewed and reversed the verdict of juries; each case must fall or stand on its own merits.

We can gather from these decisions the rules which must govern our deliberations, and receive instructions from them by analogy, but the facts in each case differ, and no one furnishes, therefore, for the other an absolute guide, except on the rules suggested. In this case the right of the plaintiff to recover depended upon the statement of the son of the deceased and such corroboration as the testimony given in addition to his, furnished —a statement to be considered in connection with the evidence on the part of the defendant.

The whole case presented, as already mentioned, and as shown by the charge of the court, a conflict of proof, and upon it the jury, fully and correctly instructed as to the law, have pronounced against the defendant. The finding is sustained by the evidence, and the judgment should be affirmed, with costs.

DANIELS, J., concurred.

DAVIS, P. J.   There are grave reasons to believe that the intestate was guilty of negligence which caused his own death.   But on that subject, the question of fact seems to have been properly submitted to the jury.   I must therefore concur.

Judgment affirmed. (*a*)

[FIRST DEPARTMENT, GENERAL TERM at New York, May 3, 1875. *Davis, Brady* and *Daniels,* Justices.]

(*a*) *S. C.,* reported very briefly, 4 *Hun,* 673, *sub nom. Kuse* v. *Same defendant.*